Docket Nos. 92701, 92702, 92703, 92704, 92705, 92706, 92707, 92708 cons.–Agenda 29–November 2001.

REPRESENTATIVE MARK BEAUBIEN 
et al.
, Plaintiffs, v. JIM RYAN, Illinois Attorney General, 
et al.
, Defendants.–KAREN HOFFEK 
et al.
, Plaintiffs, v. JIM RYAN, Illinois Attorney General, 
et al.
, Defendants.–REPRESENTATIVE ROSEMARY MULLIGAN 
et al
., Plaintiffs, v. JIM RYAN, Illinois Attorney General, 
et al.
, Defendants.–JOHN UPHOFF 
et al
., Plaintiffs, v. JIM RYAN, Illinois Attorney General, 
et al.
,  Defendants.–REPRESENTATIVE PATRICIA LINDER 
et al
., Plaintiffs, v. JIM RYAN, Illinois Attorney General, 
et al.
, Defendants.–LARRY MASSEY 
et al
., Plaintiffs, v. JIM RYAN, Illinois Attorney General, 
et al
., Defendants.–REPRESENTATIVE RICK WINKEL 
et al
., Plaintiffs, v. JIM RYAN, Illinois Attorney General, 
et al
., Defendants.–REPRESENTATIVE ANNE ZICKUS 
et al
., Plaintiffs, v. JIM RYAN, Illinois Attorney General, 
 et al
., Defendants.

Opinion filed December 27, 2001.

CHIEF JUSTICE HARRISON delivered the opinion of the court:

In 
Cole-Randazzo v. Ryan
, No. 92443 (November 28, 2001), our court considered and rejected a challenge to the validity of the redistricting plan approved by the Illinois Legislative Redistricting Commission and filed with the Secretary of State following the federal decennial census conducted in the year 2000. During the pendency of 
Cole-Randazzo
, 13 additional cases were filed challenging the same redistricting plan. Five of those case were voluntarily dismissed by the plaintiffs shortly after they filed their briefs. The remaining eight cases are the subject of the proceedings before us today.

As with 
Cole-Randazzo
, each of the eight new cases invokes this court’s original jurisdiction under article IV, section 3, of the Illinois Constitution of 1970 (Ill. Const. 1970, art. IV, §3). Plaintiffs are various registered Illinois voters, some of whom are incumbent members of the Illinois General Assembly.
(footnote: 1) Named as defendants are the Attorney General of Illinois; the Illinois State Board of Elections, the Board’s executive director and its members; and the Illinois Legislative Redistricting Commission (the Commission) and its members.

The actions were commenced when plaintiffs filed motions for leave to file their complaints in accordance with Supreme Court Rule 382 (155 Ill. 2d R. 382). We granted those motions, established a briefing schedule, and consolidated the actions for disposition. We also permitted John Tully, a registered voter, and Emil Jones, Jr., the Minority Leader of the Illinois Senate, to intervene as additional defendants. No oral argument was entertained.

All eight of the new cases were prepared by a related group of lawyers and seek the same relief: a declaration that certain of the representative (House) districts contained in the new redistricting plan are invalid and an order adopting, in their place, modified district boundaries as proposed by the plaintiffs. The cases differ only in the particular districts each attacks. Cause No. 92701 challenges the boundaries established by the Commission for Representative Districts 51, 52, 53, 54, 58, 59, 60, 61, 62, 63 and 64. Cause No. 92702 takes issue with the boundaries for the 99th and 100th Representative Districts. The 15th, 16th, 17th, 18th, 19th, 20th, 57th, 65th and 66th Representative Districts are the subject of cause No. 92703. Cause No. 92704 attacks the 75th, 79th and 86th Representative Districts, while the 50th, 83rd, 84th, and 96th Representative Districts are the subject of cause No. 92705. Cause No. 92706 seeks to invalidate the boundaries for Representative Districts 113, 114, 115, and 116. The 103rd, 104th, and 105th Representative Districts are contested in cause No. 92707. Cause No. 92708 pertains to the boundaries for Representative Districts 27, 28, 30, 31, 35, 36, 37 and 38.

Representative Districts 99 and 100 cover the area in and around Springfield. Representative Districts 103 through 105 include the City of Champaign and nearby areas. Representative Districts 113 through 116 are located in southern Illinois, including portions of the St. Louis metropolitan area. The 35 other districts are all situated in Cook County and the counties near Cook.

Some of the districts challenged in the foregoing actions, including Representative Districts 15, 18, 35, 36, 75, 99, 100, 113 and 114, were also singled out for scrutiny by the original and intervening plaintiffs in 
Cole-Randazzo v. Ryan
, No. 92443 (November 28, 2001). The balance, though not specifically identified by the 
Cole-Randazzo
 plaintiffs, were implicated in that case to the extent that the plaintiffs there attacked the new redistricting plan as a whole.

The plaintiffs in the cases before us today make no claim that the process employed by the Commission in formulating the new redistricting plan was in any way improper. No procedural irregularities are cited. No assertion is made that the Commission failed to consider relevant evidence or took into account evidence it should not have considered. As in 
Cole-Randazzo
, the sole issue is whether the particular districts challenged by plaintiffs comport with the compactness requirement set forth in our state’s constitution.

We undertake our consideration of plaintiffs’ claim mindful that under the Illinois Constitution of 1970, establishing boundaries for legislative and representative districts is a legislative function, not a judicial one. The duty to redistrict legislative and representative districts is expressly vested in the General Assembly. It does not become a judicial function merely because the members of the General Assembly are unwilling or unable to enact a new map within the time prescribed by law. When that occurs, as it did in the matter before us, establishing new district boundaries becomes the responsibility of the Commission, not this court. Ill. Const. 1970, art. IV, §3(b).

Where the Commission subsequently approves and files a redistricting plan, as it did here, the plan is presumed to be valid and must be given the force and effect of law. Ill. Const. 1970, art. IV, §3(b). In that respect, redistricting plans are directly analogous to statutory enactments, which are also cloaked with the presumption of validity. The presumption of validity means that courts must uphold a statute’s constitutionality whenever reasonably possible. Correspondingly, a party challenging the statute’s constitutionality bears the burden of clearly establishing the law’s constitutional infirmity. 
People v. Sanders
, 182 Ill. 2d 524, 528-29 (1998). So it is with a duly approved and filed redistricting plan. The proponents of the redistricting plan before us today therefore have no obligation to prove to our court that the districts formulated under the plan pass constitutional muster. Rather, the burden is on plaintiffs, who are challenging the plan, to clearly establish that the map is 
not
 constitutional.

Where, as here, challengers to a redistricting plan allege that districts formulated by the Commission fail to meet our constitution’s compactness requirement, the applicable burden of proof requires those challengers to establish that the plan is against the manifest weight of the evidence. 
Cole-Randazzo
, slip op. at 4. Under Illinois law, a decision is not against the manifest weight of the evidence unless the opposite conclusion is clearly evident. That other conclusions might be reasonable is of no consequence. If there is evidence to support the decision, it should not be disturbed. See, 
e.g.
, 
Abrahamson v. Illinois Department of Professional Regulation
, 153 Ill. 2d 76, 88 (1992).

The redistricting plan before us today was the product of a series of meetings and public hearings held in September of 2001, following the selection of a ninth Commission member pursuant to the provisions of our state’s constitution. See Ill. Const. 1970, art. IV, §3(b).
(footnote: 2) During those proceedings, the Commission considered various plans. It heard testimony and took other evidence regarding the plans’ strengths and weaknesses. Expert witnesses, community groups, and others were permitted to present their views. Among those whose voices were heard were the Mexican-American Legal Defense Fund, the African-American Working Group on Reapportionment (which included the Chicago Urban League and the NAACP), the Independent Voters of Illinois/Independent Precinct Organizations, the Midwest Community Conference, and the Asian-American Redistricting Coalition. A voluminous record was created.

In its final form, the plan ultimately adopted and filed by the Commission is not discernibly different, in terms of compactness, from the plan approved by this court in 
People ex rel. Burris v. Ryan
, 147 Ill. 2d 270, 296 (1992), following the last federal decennial census. The similarity of compactness was confirmed by quantitative analysis. 
Cole-Randazzo
, slip op. at 3. While some of the districts are certainly less compact than others, we pointed out in 
Cole-Randazzo
, slip op. at 3, that the same was true of districts drawn under the previous map, which this court approved in 
People ex rel. Burris v. Ryan. 
Overall, the level of compactness has changed little.

In each of the eight cases now before us, plaintiffs contend that the districts drawn by the Commission after the latest census should nevertheless be rejected because alternative boundaries can be formulated that would be more compact. Our court has expressly held, however, that the ability to devise more compact formulations is not a sufficient basis for invalidating a map duly approved and filed according to law. 
Cole-Randazzo
, slip op. at 3.

Under Illinois law, the issue of compactness cannot be considered in isolation. The formulation of redistricting plans involves complicated considerations requiring careful study and a weighing of factors. 
Donovan v. Holzman
, 8 Ill. 2d 87, 93 (1956). As we noted in 
Cole-Randazzo
, slip op. at 3, compactness is but one of several different criteria that legislative and representative districts must satisfy. Districts must also be substantially equal in population, they must be configured in such a way as to provide adequate representation to minorities and other special interests protected by state and federal law, and they must meet all legal requirements regarding political fairness.
 Cole-Randazzo
, slip op. at 2, citing
 People ex rel. Burris v. Ryan
, 147 Ill. 2d 270, 296 (1992). No matter how compact a proposed district may be geographically, it will not suffice under the law unless it also complies with each of these additional factors. 
Cole-Randazzo
, slip op. at 3.

Geography, climate, commerce and human behavior being what they are, the population of Illinois is not distributed in homogenous, evenly spaced cells or grids. Because of that, an insistence on narrow, exact or inflexible measures of compactness would make adherence to the additional requirements we have recognized virtually impossible. Accordingly, perfect or maximum compactness is not required. Districts need only be “reasonably compact.” 
People ex rel. Burris v. Ryan
, 147 Ill. 2d at 282; 
People ex rel. Scott v. Grivetti
, 50 Ill. 2d 156, 166 (1971).

In setting the boundaries for the redistricting plan at issue in this case, the Commission rigorously adhered to the equality of population requirement. That the Commission’s plan also provides adequate representation to minorities and other special interests protected by state and federal law is not questioned, nor is there any question that the plan conforms to legal requirements regarding political fairness. Under these circumstances, and considering the contours of some of the districts in the map previously approved by our court in 
People ex rel. Burris v. Ryan
, we have no basis for holding that the districts challenged here are not reasonably compact.

Plaintiffs complain that the Commission’s plan will result in some units of local government being split into different districts, but a district does not fail the “reasonably compact” standard simply because its boundaries cut through or across local units of government, such as municipalities, villages, townships, cities and counties. Our court has long recognized that the boundaries of such units do not necessarily reveal communities of interest and that such units may have to be split for redistricting purposes in order for the resulting districts to meet the other requirements of law, particularly the requirement of equality of population. See 
Grivetti
, 50 Ill. 2d at 166-67. We note, moreover, that the plan adopted by the Commission here actually resulted in far fewer splits of counties, townships and municipalities, on balance, than the map favored by the Commission’s Republican members and unsuccessfully offered to the Commission as an alternative to the map ultimately adopted.

Redistricting is a difficult and often contentious process. A balance must be drawn. Trade-offs must be made. In the end, the question turns on who is to make those assessments. Our predecessors on this court answered that question more than a century ago:

“Who, then, must finally determine whether or not a district is as compact as it could or should have been made? Surely not the courts, for this would take from the legislature all discretion in the matter and vest it in the courts, where it does not belong; and no apportionment could stand unless the districts should prove as compact as the judges might think they ought to be or as they could themselves make them. As the courts cannot make a senatorial apportionment directly, neither can they do so indirectly. There is a vast difference between determining whether the principle of compactness of territory has been applied at all or not, and whether or not the nearest practical approximation to perfect compactness has been attained. The first is a question which the courts may finally determine; the latter is [not].” 
People ex rel. Woodyatt v. Thompson
, 155 Ill. 451, 480 (1895).

For the foregoing reasons, the requests by plaintiffs for a declaratory judgment invalidating the redistricting plan approved and filed by the Commission and for an order adopting the modified district boundaries proposed by plaintiffs are hereby denied. Judgment is entered for defendants. The mandate of this court shall issue immediately.

So ordered.

JUSTICE THOMAS, dissenting:

The majority denies the plaintiffs’ request for a declaratory judgment invalidating the redistricting plan approved and filed by the Commission and denies plaintiffs’ request for an order adopting the modified district boundaries proposed by plaintiffs. In reaching its decision, the majority concludes that “[i]n its final form, the plan ultimately adopted and filed by the Commission is not discernibly different, in terms of compactness, from the plan approved by this court in 
People ex rel. Burris v. Ryan
, 147 Ill. 2d 270, 296 (1992), following the last federal decennial census.” Slip op. at 5. Assuming, 
arguendo
, that this is an accurate statement, the fact remains that the proceedings ultimately leading to the adoption of the plan in 
Ryan
 were markedly different from the proceedings in this case. Consequently, I find comparisons to the plan approved in the 
Ryan
 case to be disingenuous.

In reaching its decision, the majority observes that our predecessors on this court more than a century ago recognized that:

“There is a vast difference between determining whether the principle of compactness of territory has been applied at all or not, and whether or not the nearest practical approximation to perfect compactness has been attained. The first is a question which the courts may finally determine; the latter is for the legislature.” 
People ex rel. Woodyatt v. Thompson
, 155 Ill. 451, 480 (1895).

While the majority characterizes these cases as raising the latter question, I believe that these cases, like 
Cole-Randazzo v. Ryan
, No. 92443 (November 28, 2001), raise questions concerning whether the principle of compactness of territory has been applied at all or not.

Certainly, a cursory review of the challenged districts raises questions of compactness. As noted, in denying plaintiffs’ compactness challenges, the majority states that the overall level of compactness in this plan has changed little when compared with the plan in 
Ryan
. Slip op. at 5. However, before approving the map at issue in 
Ryan
, this court remanded the case to the Commission for hearings to address questions with regard to those districts that did not appear to meet the constitutionally mandated requirements of compactness and of free and equal elections. 
Ryan
, 147 Ill. 2d at 285-86. Remand was necessary because the parties had presented insufficient evidence for the court to ascertain whether the district lines met legal guidelines. 
Ryan
, 147 Ill. 2d at 284. Both sides had thwarted any type of hearing on their proposed maps by submitting their plans and amendments on the last two days. 
Ryan
, 147 Ill. 2d at 284-85. Absent any evidence, this court declined to “approve or disapprove any plan 
no matter how fair, compact or contiguous and substantially equal the districts have been formed.
” (Emphasis added.) 
Ryan
, 147 Ill. 2d at 285. To review the maps without sufficient evidence would “circumvent the spirit and purpose of the Illinois Constitution.” 
Ryan
, 147 Ill. 2d at 285.

In approving the map following remand, the majority in 
Ryan
 expressed its “hope that this situation will not again be before this court and place in jeopardy the voting rights of the people of this State.” 
Ryan
, 147 Ill. 2d at 294. Unfortunately, this situation again is before this court. Justice Garman and I noted in our dissents to the 
Cole-Randazzo
 decision that the process through which the plan in this case was drawn was at variance with the constitutional mandate. The map that was approved in this case was presented in the last few days, thereby thwarting any type of hearing that would ensure that constitutional requirements were met. 
Cole-Randazzo
, slip op. at 5-6 (Thomas, J., dissenting, joined by Garman, J.). The proceedings culminating in the adoption of the map included surprise expert witnesses, secret witness lists, lack of opportunity for meaningful cross-examination, and minimal findings of fact and conclusions of law. 
Cole-Randazzo
, slip op. at 12 (Garman, J., dissenting, joined by Thomas, J.).

Despite the infirmities in the process leading to the adoption of this map, the majority in 
Cole-Randazzo
 did not address that process, choosing instead to accord the map a presumption of validity. Here too, the majority glosses over the procedural shortcomings in the creation of the map by noting that the plaintiffs in these cases “make no claim that the process employed by the Commission in formulating the new redistricting plan was in any way improper.” Slip op. at 3. Nonetheless, the majority later seems to suggest that the hearings were proper, indicating that the “redistricting plan before us today was the product of a series of meetings and public hearings held in September of 2001 ***. During those proceedings, the Commission considered various plans.” Slip op. at 4. This statement is misleading, as the majority of those proceedings did not address the map ultimately adopted, because that map was introduced in the last days of the proceeding. See 
Cole-Randazzo
, slip op. at 7 (Thomas, J., dissenting, joined by Garman, J.).

Absent a remand in this case directing the Commission to hold a hearing consistent with the spirit and purpose of the Illinois Constitution, it is inappropriate to approve this plan on the ground that the plan is “not discernibly different, in terms of compactness, from the plan approved” in 
Ryan
. Until the Commission has been presented with and has considered evidence justifying departures from the constitutional requirements of compactness, it is premature to presume the validity of such departures.

Because I believe the map should be returned to the Commission for further proceedings, I respectfully dissent from the majority opinion.

JUSTICE GARMAN joins in this dissent.

JUSTICE GARMAN, also dissenting:

The Illinois Constitution of 1970 requires legislative and representative districts to “be compact, contiguous, and substantially equal in population.” Ill. Const. 1970, art. IV, §3(a). The majority goes to great lengths to stress that the redistricting process requires a careful weighing of factors, and that compactness is but one of several different factors to be considered. Slip op. at 5-6. Compactness is not optional; it is mandated by the Illinois Constitution. Legislative districts need not be perfect, but “reasonably compact.” 
People ex rel. Burris v. Ryan
, 147 Ill. 2d 270, 282 (1991) (
Ryan
 
I
); 
Schrage v. State Board of Elections
, 88 Ill. 2d 87, 95 (1981), 
People ex rel. Scott v. Grivetti
, 50 Ill. 2d 156, 166 (1971).

Plaintiffs here, much like plaintiff intervenors in 
Cole-Randazzo v. Ryan
, No. 92443 (November 28, 2001), have proposed modifications to certain districts in the Commission’s map that would result in districts that are not only equally populated but also substantially more compact. Although, as the majority correctly notes, it is not the function of this court to compare maps to determine whether districts were formulated to be as compact as possible, it 
is
 this court’s function to determine whether “ ‘the principle of compactness of territory has been applied at all.’ ” Slip op. at 7, quoting 
People ex rel. Woodyatt v. Thompson
, 155 Ill. 451, 480 (1895). From a visual inspection of the Commission’s map–the final version of which was adopted less than 24 hours after being proposed–it appears that the Commission did not attempt to apply the constitutional principle of compactness to certain districts.

For example, plaintiffs challenge, in part, Representative Districts 99, 100, 113, and 114, districts I concluded in 
Cole-Randazzo
 were severely gerrymandered and appear to violate the compactness requirement. 
Cole-Randazzo
, slip op. at 11 (Garman, J., dissenting, joined by Thomas, J.). District 114 “is a bizarrely drawn U-shaped district that substantially wraps around Representative District 113. Similarly, Representative District 100 wraps around the 99th Representative District on three sides.” 
Cole-Randazzo
, slip op. at 11 (Garman, J., dissenting, joined by Thomas, J.). Further, plaintiffs challenge the 104th Representative District, which includes parts of Champaign and Vermilion Counties and, much like the above districts, encircles the 103rd Representative District almost in its entirety. The 103rd District spans only eight miles from north to south and nine miles from east to west, and includes the cities of Champaign and Urbana in Champaign County. In contrast, adjacent Representative District 105 runs approximately 73 miles from north to south, 61 miles from east to west, and includes six counties. Plaintiffs also challenge the 75th Representative District, a district also challenged by the plaintiff intervenors in 
Cole-Randazzo
. This district presents the classic gerrymander in that it is shaped much like a dragon, with its head situated in the northern part of La Salle County and a tail that swoops down into Iroquois County.

In 
Schrage
, 88 Ill. 2d at 98, this court invalidated a representative district that was “a tortured, extremely elongated form which [was] not compact in any sense.” We noted that equal population of the invalidated district and an adjacent representative district could be achieved without “doing violence to the concept of compactness.” 
Schrage
, 88 Ill. 2d at 98. Supporters of the challenged district were unable to advance any reason to justify the departure from the compactness requirement. 
Schrage
, 88 Ill. 2d at 98. I see no distinction between the district invalidated in 
Schrage
 and several of the districts challenged by plaintiffs in the cases at bar. Further, the record of proceedings indicates no evidence of neutral criteria to support the apparent departure of certain districts from the constitutional requirement of compactness. As noted by Justice Thomas in his dissent in 
Cole-Randazzo
, slip op. at 7 (Thomas, J., dissenting, joined by Garman, J.), the majority of the record and witness testimony does not even address the constitutional validity of the final version of the Commission’s map.

Finally, in 
Cole-Randazzo
, the majority failed to address the plaintiff intervenors’ challenge to the proceedings that led to the adoption of the redistricting map challenged today. There, plaintiff intervenors alleged that the proceedings were flawed because, 
inter
 
alia
, the final redistricting plan was proposed and passed within a 24-hour period and expert witnesses were presented without advance notice or a meaningful time to prepare cross-examination. Here, the majority notes that “plaintiffs in the cases before us today make no claim that the process employed by the Commission in formulating the new redistricting plan was in any way improper.” Slip op. at 3. Nevertheless, the majority later states that the Commission held “a series of meetings and public hearings,” “considered various plans,” received “evidence regarding the plans’ strengths and weaknesses,” and heard testimony from several expert witnesses and others. Slip op. at 4. Again, the majority fails to address the heart of the matter and attempts to cloak the proceedings with validity. The court has avoided its duty. Whether plaintiffs expressly challenge the validity of the proceedings, this court has a duty to ensure that the process that ultimately results in a redistricting map that will represent the people of Illinois for the next decade will be “equitable, balanced, and fair.” 
Cole-Randazzo
, slip op. at 8 (Thomas, J., dissenting, joined by Garman, J.).

For the reasons stated above, I would remand this map to the Redistricting Commission; therefore, I respectfully dissent.

JUSTICE THOMAS joins in this dissent.

FOOTNOTES
1:     
1
The legislators participating as plaintiffs are Rep. Mark Beaubien (R., 52nd Rep. Dist.), Rep. Raymond Poe (R., 99th Rep. Dist.), Rep. Rosemary Mulligan (R., 55th Rep. Dist.), Rep. Patricia Linder (R., 65th Rep. Dist.), Rep. Mike Bost (R., 115th Rep. Dist.), Rep. Rick Winkel (R., 103rd Rep. Dist.), Rep. Tom Berns (R., 104th Rep. Dist.), and Rep. Anne Zickus (R., 48th Rep. Dist.).

2:     
2
A challenge to the constitutionality of the procedure by which the ninth member of the Commission was selected was considered and rejected by a three-judge panel of federal judges in 
Barnow v. Ryan
, No. 01–CV–06566 (N.D. Ill., September 28, 2001).